UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

---

CB BRAND STRATEGIES, LLC and
TRADEMARKS GRUPO MODELO, S. DE
R.I. DE C.V.,

                Plaintiffs,

    -against-

NATIONAL DISTRIBUTION COMPANY,
INC.,

                Defendant.

---

Civil Action No.

**COMPLAINT**
**JURY TRIAL DEMANDED**

---

Plaintiffs CB Brand Strategies, LLC ("CBBS") and Trademarks Grupo Modelo, S. de R.I. de C.V. ("Modelo") (collectively "Plaintiffs" or "Constellation"), by their undersigned attorneys, state the following for their Complaint against Defendant National Distribution Company, Inc. ("NDC").

## NATURE OF THE ACTION

1.    This is an action for trademark and trade dress infringement, unfair competition, dilution, and false advertising under federal, state, and common law.

2.    CBBS is the exclusive importer and distributor of CORONA®-branded beer in the United States.

3.    Modelo is the owner of the Corona brand.

4.    CBBS is the exclusive licensee of the Corona brand, including its trademarks, trade dresses, and all other protectable intellectual property that comprises the Corona brand, in the fifty United States.

5.    The Corona brand is famous in the United States.

6.      When confronted with one or more of the elements comprising the Corona brand, such as its golden yellow, white, and blue color scheme, and distinctive bottle, consumers immediately think of Corona.

7.      Defendant has recently been marketing, distributing, and selling a product called "Michelada Factory" that consists of six stacked, shrink-wrapped cups mimicking famous elements of the Corona brand (the "Infringing Product").

8.      As these images demonstrate, the Infringing Product is clearly meant to evoke the Corona brand in the minds of consumers:

| **Infringing Product** | **Corona Products** |
| --- | --- |
|  |  |



9.      It is impossible to view the Infringing Product as anything other than a blatant attempt to mimic a Corona brand product.

10.      Upon encountering the Infringing Product, the Corona brand immediately comes to consumers' minds.  Consumers will inaccurately believe that the Infringing Product comes from the same source as Constellation's goods, or that the Infringing Product is sponsored by, endorsed by, or otherwise affiliated with Constellation/Corona, none of which is true.

11.      Defendant's conduct deceives consumers and causes significant, irreparable harm to Constellation.

## PARTIES

12.      Plaintiff CB Brand Strategies, LLC is a Delaware limited liability company, which has its office registered at Baarerstrasse 14, CH-6300 Zug, Switzerland, and has a principal place of business in Victor, NY.

13. Plaintiff Trademarks Grupo Modelo, S. de R.I. de C.V. is a Mexican corporation with its principal place of business in Mexico. Modelo is represented in this action by CBBS, which is serving as Modelo's designated agent.

14. Upon information and belief, Defendant National Distribution Company, Inc. is a corporation organized under the laws of Texas with its principal place of business located in El Paso, Texas.

**JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367.

16. This Court has personal jurisdiction over Defendant because it maintains a permanent place of business in Illinois, committed the acts complained of in Illinois, and harmed consumers and Constellation in Illinois.

17. Venue is proper under 28 U.S.C. § 1391(b) because Defendant has a permanent place of business in this judicial district and because a substantial part of the events giving rise to Constellation's claims occurred in this judicial district.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

**Constellation's Rights in the Corona Brand**

18. Modelo is the owner of various intellectual property assets relating to the Corona brand.

19. Pursuant to a license agreement dated June 7, 2013 (the "License Agreement"), Constellation Beers Ltd. became the exclusive U.S. licensee of various intellectual property assets, including all the Corona brand assets at issue in this action.

20.     CBBS is Constellation Beers Ltd.'s successor-in-interest.  As such, CBBS is now the exclusive licensee of, *inter alia*, all the Corona brand assets at issue in this action.

21.     Several of the Corona brand assets at issue in this action are protected by U.S. trademark registrations (collectively, the "Registrations").  The Registrations include, but are not limited to, the following:

| **Mark** | **Registration No.** |
|---|---|
|  | 3,317,902 |
| LA CERVEZA MAS FINA | 2,963,654 |
|  | 1,495,289 |
|  | 1,729,694 |

| Mark | Registration No. |
| --- | --- |
|  | 1,681,365 |
| CORONA EXTRA | 3,388,566 |
|  | 3,544,217 |
|  | 3,544,218 |
| THE ORIGINAL CERVEZA MAS FINA | 6,540,410 |
|  | 1,462,155 |
|  | 3,048,028 |

22.    Modelo owns the Registrations.

23.     Pursuant to the License Agreement, CBBS maintains and enforces all the intellectual property assets subject to the License Agreement, including the Registrations.

**The Corona Brand**

24.     The Corona brand is comprised of multiple intellectual property assets, of which certain assets are relevant to this action.

***The Corona Bottle Trade Dress***

25.     Among the Corona brand assets is the "Corona Bottle Trade Dress."

26.     The Corona Bottle Trade Dress is comprised of the following elements:

1.  A distinctively shaped glass bottle with the following characteristics:

    -   From its bottom to its top, the bottle is about 9.5 inches tall.

    -   The bottom half of the bottle is its widest, at about 2.25 inches wide.

    -   At the top of its widest portion, the bottle curves inward and upward to form the base of the bottle's neck.

    -   From its base to its top, the neck of the bottle is about 4 inches long.

    -   As opposed to brown, green, or any of the other commonly used beer bottle colors in the market, the bottle is clear to make visible the beer's golden color.

2.  A rectangular label with the following arbitrary design elements:

    -   The label has two horizontal halves - an upper half with a white background, and a lower half with a blue background to symbolize the ocean.

    -   On the white half, a Spanish word comprised of six letters in blue typeface

appears at the top directly above a superlative that is also in blue typeface.

- The bottom portion of the white half and the top portion of the blue half are joined together by golden design elements, including a large golden circular design and images of two golden griffins.

- The bottom portion of the blue half of the label contains the Spanish terms "Cerveza" and/or "Cerveceria" in white typeface.



27. The Corona Bottle Trade Dress is inherently distinctive.

28. The Corona Bottle Trade Dress has acquired distinctiveness.

29.     Consumers understand that the combination of elements that comprise the Corona

Bottle Trade Dress serves to signify a product that comes from a single source (*i.e.*,

Constellation).

30.     The Corona Bottle Trade Dress is not functional.

31.     The Corona Bottle Trade Dress is famous.

32.     The Corona Bottle Trade Dress has been exclusively and continuously used in

U.S. commerce for decades.

33.     Hundreds of millions of dollars have been spent marketing, advertising, and

promoting the Corona Bottle Trade Dress in the U.S.

### *The Corona Six Pack Trade Dress*

34.     Another of the Corona brand assets is the "Corona Six Pack Trade Dress."

35.     The Corona Six Pack Trade Dress is comprised of the following elements placed

on a cardboard six pack bottle container:

1. An upper handle portion that is golden colored and states the contents in bold, blue typeface.

2. A lower bottle holder portion bearing the following artwork:

   - There are two horizontal sections - an upper section with a white background, and a lower section with a blue background.

   - On the white upper section, a Spanish word comprised of six letters in blue typeface appears at the top directly above a superlative that is also in blue typeface.

   - The bottom portion of the white upper section and the top portion of the blue lower section are joined



9

together by golden design
elements, including a large golden
circular design.

36.     The Corona Six Pack Trade Dress is inherently distinctive.

37.     The Corona Six Pack Trade Dress has acquired distinctiveness.

38.     Consumers understand that the combination of elements that comprise the Corona

Six Pack Trade Dress serves to signify a product that comes from a single source (*i.e.*,

Constellation).

39.     The Corona Six Pack Trade Dress is not functional.

40.     The Corona Six Pack Trade Dress has been exclusively and continuously used in

U.S. commerce for decades.

### *The Corona Box Trade Dress*

41.     Another of the Corona brand assets is the "Corona Box Trade Dress."

42.     The Corona Box Trade Dress is comprised the of the following elements placed

on a cardboard box:

1.  The second element of the Corona Six Pack Trade Dress (¶ 35 *supra*) on the top, front, and
    back sides of the box.

2.  A two dimensional image of the Corona Bottle Trade Dress (¶ 26 *supra*) on the left and
    right sides of the box.

 

43.     The Corona Box Trade Dress is inherently distinctive.

44.     The Corona Box Trade Dress has acquired distinctiveness.

45.     Consumers understand that the combination of elements that comprise the Corona Box Trade Dress serves to signify a product that comes from a single source (*i.e.*, Constellation).

46.     The Corona Box Trade Dress is not functional.

47.     The Corona Box Trade Dress has been exclusively and continuously used in U.S. commerce for decades.

### *The Corona Bottle Trademark*

48.     Another Corona brand asset is the "Corona Bottle Trademark."



49.     The Corona Bottle Trademark is protected by U.S. Registration No. 3,317,902, which describes the mark as "a two-dimensional representation of a Corona beer bottle, a piece of lime extending from the top of the bottle, and the product label on the bottle that includes a design of a crown, golden griffins, and the wording Corona Extra and La Cerveza Mas Fina."

50.     An example of the Corona Bottle Trademark in use, as it appears on the Corona website, is shown below:



51.    The Corona Bottle Trademark has been registered since October 23, 2007.

52.    The Corona Bottle Trademark registration is incontestable.

53.    The Corona Bottle Trademark is famous.

54.    Constellation and/or its predecessors have continuously and exclusively used the Corona Bottle Trademark in the U.S. for decades.

55.    Hundreds of millions of dollars have been spent marketing, advertising, and promoting the Corona Bottle Trademark in the U.S.

### *The La Cerveza Mas Fina Trademark*

56.    Another Corona brand asset is the LA CERVEZA MAS FINA mark (the "La Cerveza Mas Fina Trademark").

57.    The La Cerveza Mas Fina Trademark has been used in commerce since 1969.

58.     The La Cerveza Mas Fina Trademark is the subject of numerous incontestable trademark registrations for use in connection with beer and other goods, including U.S. Registration Nos. 2,963,654; 1,495,289; and 1,729,694.

59.     The La Cerveza Mas Fina Trademark is famous.

60.     Hundreds of millions of dollars have been spent marketing, advertising, and promoting the La Cerveza Mas Fina Trademark in the U.S.

### *The Corona Extra Trademark*

61.     Another Corona brand asset is the CORONA EXTRA mark (the "Corona Extra Trademark").

62.     The Corona Extra Trademark has been used in commerce since 1969.

63.     The Corona Extra Trademark is the subject of numerous incontestable trademark registrations for use in connection with beer and other products, including U.S. Registration Nos. 1,681,365; 3,317,902; 3,544,217; 3,544,218; 1,729,694; 3,388,566; and 2,993,696.

64.     The Corona Extra Trademark includes the words "Corona Extra" as written in a distinctive typeface as shown below:



65.     The Corona Extra Trademark is famous.

66.     Hundreds of millions of dollars have been spent marketing, advertising, and promoting the Corona Extra Trademark in the United States.

***The Corona Bottle Trade Dress, Corona Box Trade Dress,
Corona Six Pack Trade Dress, Corona Bottle Trademark, La Cerveza
Mas Fina Trademark, and Corona Extra Trademark are Famous***

67.     Corona beer is sold in the United States using the Corona Bottle Trade Dress,

Corona Box Trade Dress, Corona Six Pack Trade Dress, Corona Bottle Trademark, the La

Cerveza Mas Fina Trademark, and/or the Corona Extra Trademark (collectively, the "Corona

Brand").

68.     After its introduction to the U.S. in 1981, Corona beer, sold using some or all of

the elements of the Corona Brand, became the fastest growing imported beer in U.S. history.

69.     In 2023, U.S. off-premise sales of Corona (*i.e.*, not including bars and restaurants)

were over $2 billion dollars.

70.     Hundreds of millions of dollars have been spent marketing, advertising, and

promoting Corona in the U.S.

71.     As exemplified below, appearing on the next page, all Corona advertising

prominently features elements of the Corona Brand:

 

 



72.   The Corona Brand has been the subject of significant unsolicited media coverage. These articles discuss Corona beer and display the marks, and many refer to the marks and/or

16

their elements specifically.  For example, Marketing Week published an article that had this to say:

> The Mexican beer brand was introduced to the world in 1925 and by the mid-1990's, Corona emerged as the top-selling import beer in the United States, a position it still holds to the present.  And since its inception, Corona has created a **consistent and emotionally engaging brand image**. The simple truth is that when most people think of Corona beer, they have a mental image . . . of a **distinctive clear bottle with blue and white branding**.  They see the **calligraphy font of Corona's brand marque** and of course the emblematic **golden crown** . . . .

Florence, *How Corona built brand equity in spite of the pandemic*, MARKETING WEEK (June 9, 2020) (emphasis added).[1]  *See also* Weinberg, *8 Things You Should Know Before Drinking A Corona*, DELISH (March 10, 2017) ("**Corona's label is a piece of art** …. **The yellow circle in the center represents the sun setting over the blue ocean** — AKA the blue strip behind it") (emphasis added);[2] Foresto, *12 Things to Know About Everyone's Favorite Beer: Corona*, POPSUGAR (April 7, 2017) ("Chances are every party you attend has a few bottles of icy and refreshing Corona ready for guests to take a sip.  After all, Coronas just transport everyone to a lazy Summer of relaxation by the beach, right?  Right!  That's actually a fact, approved by the brand itself, whose label depicts a sunset by the ocean …. **The yellow in the label** represents the sun, while **the blue** imitates the ocean.  The **circle in the middle** that reads '**La Cerveza Mas Fina**' is meant to be the sun setting on the horizon to represent the best time to enjoy the beer.") (emphasis added);[3] Wolinski, *The Right Way to Drink a Corona in Five Easy Steps*, VINEPAIR (March 20, 2018) ("There is, however, an art to consuming *la cerveza mas fina* — lime flip and all") (emphasis in original).[4]

---

[1] https://www.marketingweek.com/corona-built-brand-equity-pandemic/.
[2] https://www.delish.com/food/a51928/things-you-should-know-before-drinking-coronas/.
[3] https://www.popsugar.com/latina/Facts-About-Corona-41379161.
[4] https://vinepair.com/articles/how-to-drink-corona/.

73.    The Corona Brand also has enjoyed unsolicited exposure in film and television, including in the popular *Fast and Furious* films. *See, e.g.,* Crabb, *Fast & Furious' Corona Use is Even Deeper Than You Realize*, SCREEN RANT (May 22, 2022) ("One of the many staples of the *Fast & Furious* franchise is the appearance of Corona beer…. Corona does not pay for their beer to be used in the *Fast & Furious* movies at all. The beer brand serves as a symbol of home and family and is an odd piece of character development for the series' protagonists, rather than an advertisement"):[5]



*Image from Screen Rant article.*

74.    The screenwriter for four of the *Fast and Furious* films has been quoted as saying that Corona is "literally a character in the films." Gruttadaro, *Any Brew You Want, As Long As It's a Corona*, THE RINGER (April 13, 2017)[6]; *see also id.* ("Dom picks up two stray beer bottles and approaches him: That's when he says it: 'You can have any brew you want as long as it's a Corona'"):

---

[5] https://screenrant.com/fast-furious-movies-dom-brian-corona-beer-meaning/.
[6] https://www.theringer.com/2017/4/13/16042804/fast-furious-movies-corona-beer-character-development-product-placement-f6bbdfc765a0.



*Image from The Ringer article.*

75.     In 2017, before being featured in subsequent films as well, it was estimated that the films had given Corona $15 million dollars of free product placement.  Vega, *'Fast and Furious' has given Corona $15 million worth of product placement — absolutely free*, BUSINESS INSIDER (April 13, 2017):[7]



*Image from Business Insider article.*

76.     The fame of the Corona Brand is further evidenced by the desire of so many people to adorn themselves (and even their babies) in it:

---

[7] https://www.businessinsider.com/fast-and-furious-corona-product-placement-free-2017-4.






77.     Indeed, Corona branded clothing is successful business in and of itself.  The Corona Brand elements can all be found on clothing sold at major national retailers, including Wal-Mart.

### Defendant's Misconduct

78.     Upon information and belief, Defendant is, and long has been, aware of the Corona Brand.

79.     Defendant is not now, and never has been, authorized to use the Corona Brand.

80.     Upon information and belief, Defendant knows that it has no rights in, and is not permitted to use, the Corona Brand.

81.     Upon information and belief, Defendant maintains permanent places of business in Illinois, Texas, California, and Georgia.

82.     Upon information and belief, Defendant imports products into, and sells products to businesses located in, the United States, including in Illinois, Texas, California, and Georgia.

83.     According to Defendant's website, Defendant serves "as a direct connection between [Latin American] business owners and key Midwest retailers and distributors."[8]

84.     According to Defendant's website, Defendant is "a key partner of hundreds of Latin business to expand their territory over North America."[9]

85.     According to Defendant's website, Defendant has a "physical location on [sic] both countries," referring to the United States and Mexico.[10]

86.     According to Defendant's website, Defendant's physical location in two countries enables Defendant to "facilitate[] the cargo monitoring to ensure the safe and on-time delivery of your product."[11]

87.     According to Defendant's website, Defendant "specializes in introducing New Products and Brands to the US Retail Market."[12]

88.     According to Defendant's website, Defendant "offer[s] a complete service that covers the full journey: From Direct Store Delivery, Pre-sell and Warehouse Programs, Merchandising Services, Product Sampling and Event Services."[13]

89.     Defendant's website highlights Defendant's physical location in Illinois and other states:[14]

---

[8] https://ndcus.com/#full-about.
[9] Id.
[10] https://ndcus.com/#presence.
[11] Id.
[12] https://ndcus.com/#product.
[13] Id.
[14] https://ndcus.com/#presence.



90.     Upon information and belief, Defendant offers for sale, sells, and distributes the Infringing Product in commerce in Illinois and throughout the United States.

91.     Among other things, Defendant offers for sale, sells, and distributes the Infringing Product to grocery stores in the United States, including in Illinois.

92.     The Infringing Product is confusingly similar to the Corona Brand and Corona's products sold under the Corona Brand.

93.     The Infringing Product mimics the Corona Brand in at least the following ways:

| | |
|---|---|
|  | Includes the phrase "Cerveza Extra," which is confusingly similar to the Corona Extra Trademark and uses the same distinctive typeface as the Corona Extra Trademark. |

| | |
|---|---|
|  | Includes the phrase "La Cerveza Fina," which is not only confusingly similar to the La Cerveza Mas Fina Trademark, but is presented in the same color and typeface, and in the same circle image, as the La Cerveza Mas Fina Trademark mark is presented on Corona Brand products. |
|  | Utilizes the same golden yellow, blue, and white color scheme as Corona Brand products, including the Corona Bottle Trade Dress, the Corona Six Pack Trade Dress, the Corona Box Trade Dress, and the Corona Bottle Trademark. |
|  | Incorporates other visual elements of the Corona Brand, including the gold-and-white crown image and golden images of two griffins. |

94.     The Infringing Product is a blatant attempt to mimic the famous Corona Brand and its famous elements.

95.     Upon encountering the Infringing Product on store shelves, consumers are likely to initially conclude that the Infringing Product is a Corona product, when it is not.

96.     Upon encountering the Infringing Product in the post-sale environment, consumers are likely to conclude that it is a Corona product, when it is not.

97.     Upon encountering the Infringing Product at any point, including in marketing, advertising, and promotional materials, consumers are likely to conclude that the Infringing Product comes from the same source as Corona products, when it does not.

98.     Upon encountering the Infringing Product at any point, including in marketing, advertising, and promotional materials, consumers are likely to conclude that Constellation/Corona is affiliated with Defendant/the Infringing Product, when it is not.

99.     Upon encountering the Infringing Product at any point, including in marketing, advertising, and promotional materials, consumers are likely to conclude that the Infringing Product is endorsed by or sponsored by Constellation/Corona, when it is not.

100.     The likelihood of confusion, mistake, and deception engendered by Defendant's misappropriation of the Corona Brand is causing irreparable harm to the goodwill symbolized by the Corona Brand and the reputation for quality that it embodies.

101.     Defendant's misappropriation of the Corona Brand whittles away the distinctiveness of the Corona Brand.

102.     Given the wide recognition of the Corona Brand, the sophistication of Defendant, and the extreme similarity between the Corona Brand and the Infringing Product, Defendant, upon information and belief, committed its acts with the intent to cause confusion or mistake, or to deceive and to trade on the goodwill long associated with the Corona Brand.

### FIRST CAUSE OF ACTION
### FEDERAL TRADEMARK INFRINGEMENT

103.     Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-102 of this Complaint as if fully set forth herein.

104.     Defendant's unauthorized use of identical and/or confusingly similar imitations of the Corona Brand is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods are manufactured or distributed by Plaintiffs, or are associated or connected with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs.

105.     Defendant has sold the Infringing Product that includes elements identical, and/or are substantially and confusingly similar, to the Corona Brand, in violation of 15 U.S.C. §§ 1114, 1125.

106.     Defendant's activities have caused, and unless enjoined by this Court will continue to cause, a likelihood of confusion and deception of members of the trade and public, and additionally, injury to Constellation's goodwill and reputation as symbolized by the Corona Brand, for which Constellation has no adequate remedy at law.

107.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Corona Brand, to Constellation's great and irreparable harm.

108.     Defendant has caused and is likely to continue causing substantial injury to the public and to Constellation.  Constellation is therefore entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## SECOND CAUSE OF ACTION
### FEDERAL UNFAIR COMPETITION

109.     Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-102 of this Complaint as if fully set forth herein.

110.     Defendant's unauthorized use of elements of the Corona Brand, and/or confusingly similar imitations of the same, is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods are manufactured or distributed by Plaintiffs, or are affiliated, associated, or connected with Plaintiffs, or have the sponsorship, or approval of Plaintiffs.

111.     Defendant has made false representations, false descriptions, and false designations of its goods in violation of 15 U.S.C. § 1125(a).

112.     Defendant's activities have caused, and unless enjoined by this Court will continue to cause, a likelihood of confusion and deception of members of the trade and public, and additionally, injury to Constellation's goodwill and reputation as symbolized by the Corona Brand, for which Constellation has no adequate remedy at law.

113.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Corona Brand, to the great and irreparable harm of Constellation.

114.     Defendant's conduct has caused, and is likely to continue causing, substantial injury to the public and to Constellation.  Constellation is therefore entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§1125(a), 1116, 1117.

### THIRD CAUSE OF ACTION
### ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

115.     Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-102 of this Complaint as if fully set forth herein.

116.     Defendant's use of the Corona Brand elements in connection with sale of the Infringing Product has caused, and is likely to continue to cause, confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendant's sale of the Infringing Product, and has caused, and is likely to continue to cause, confusion or misunderstanding as to whether Defendant's sales are affiliated, associated, or connected with Plaintiffs, and/or associated with or certified by Plaintiffs.

117. Upon information and belief, Defendant acted with full knowledge of Constellation's use of, and statutory and common law rights to, the Corona Brand, and without regard to the likelihood of confusion of the public created by Defendant's actions.

118. Defendant's conduct, which is in or affecting commerce, constitutes deceptive trade practices in the course of Defendant's business causing damage to Constellation, in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, *et seq.*

119. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Corona Brand, to the great and irreparable injury of Constellation, and also to cause confusion or mistake or to deceive consumers.

120. As a result of Defendant's acts, Constellation has been damaged in an amount yet to be determined. At a minimum, however, Constellation is entitled to injunctive relief, damages, and attorneys' fees and costs pursuant to 815 ILCS § 510/3.

**FOURTH CAUSE OF ACTION**
**COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

121. Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-102 of this Complaint as if fully set forth herein.

122. Defendant's acts constitute common law trademark infringement and unfair competition under the laws of the State of Illinois, and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Constellation. Constellation has no adequate remedy at law for this injury.

123. Defendant acted with full knowledge of Constellation's use of, and statutory and common law rights to, the Corona Brand, and without regard to the likelihood of confusion of the public created by Defendant's actions.

124. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Corona Brand, to the great and irreparable injury of Constellation.

125. As a result of Defendant's acts, Constellation has been damaged in an amount yet to be determined. At a minimum, however, Constellation is entitled to injunctive relief, an accounting of Defendant's profits, damages, and costs. Further, in light of the deliberately fraudulent and malicious use of the Corona Brand, and the need to deter Defendant from engaging in similar conduct in the future, Constellation additionally is entitled to punitive damages.

### FIFTH CAUSE OF ACTION
### FEDERAL TRADEMARK DILUTION

126. Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-102 of this Complaint as if fully set forth herein.

127. For decades, Constellation and/or its predecessors exclusively and continuously promoted and used the Corona Brand in the United States. The Corona Brand elements thus became famous symbols of Constellation and Corona beer long before Defendant started offering the Infringing Product.

128. By selling and distributing the Infringing Product, Defendant is making use in commerce of marks that dilute and are likely to dilute the distinctiveness of the Corona Brand by eroding the public's exclusive identification of the marks that make up the Corona Brand and lessening the capacity of those marks to identify and distinguish Constellation's Corona Brand products.

129.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Corona Brand and/or to cause dilution of the Corona Brand, to the great and irreparable injury of Constellation.

130.     Defendant has caused, and will continue to cause, irreparable injury to Constellation's goodwill and business reputation, and dilution of the distinctiveness and value of Constellation's famous and distinctive Corona Brand, in violation of 15 U.S.C. §1125(c). Constellation is therefore entitled to injunctive relief.

### SIXTH CAUSE OF ACTION
### ILLINOIS TRADEMARK DILUTION

131.     Constellation repeats and re-alleges each and every allegation contained in paragraphs 1-102 of this Complaint as if fully set forth herein.

132.     For decades, Constellation and/or its predecessors exclusively and continuously promoted and used the Corona Brand in the United States, including in Illinois.  The Corona Brand elements thus became famous symbols of Constellation and Corona beer in the United States generally and in Illinois specifically long before Defendant started offering the Infringing Product.

133.     By selling and distributing the Infringing Product in Illinois, Defendant is making use in commerce of marks that dilute and are likely to dilute the distinctiveness of the Corona Brand by eroding the public's exclusive identification of the marks that make up the Corona Brand and lessening the capacity of those marks to identify and distinguish Constellation's Corona Brand products.

134.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Corona Brand and/or to cause dilution of the Corona Brand, to the great and irreparable injury of Constellation.

135.    Defendant has caused, and will continue to cause, irreparable injury to Constellation's goodwill and business reputation, and dilution of the distinctiveness and value of Constellation's famous and distinctive Corona Brand, in violation of the Illinois Trademark Registration and Protection Act, 765 ILCS § 1036/65.

136.    As a result of Defendant's acts, Constellation has been damaged in an amount yet to be determined.  At a minimum, however, Constellation is entitled to injunctive relief, an accounting of Defendant's profits, treble damages, and attorneys' fees and costs pursuant to 765 ILCS § 1036/65(a) and 765 ILCS § 1036/70.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that:

1.    Defendant and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by through or under authority from Defendant, or in concert with Defendant, and each of them, be preliminarily and permanently enjoined from:

   a.    manufacturing, having manufactured, importing, advertising, offering for sale, selling, or distributing the Infringing Product or any product that bears, uses, or reflects any trade names, trademarks, or trade dresses that are likely to cause confusion with the Corona Brand; and

   b.    representing by any means whatsoever, directly, or indirectly, that Defendant, any goods or services offered by Defendant, or any activities undertaken by Defendant, are associated with, authorized by, or connected in any way with Plaintiffs.

30

2.    Defendant be ordered to cease offering for sale, marketing, promoting, and selling, to remove from any retail stores, and to recall all of the Infringing Product that is in Defendant's possession or has been shipped by Defendant or under its authority, to any customer, including, without limitation, any wholesaler, distributor, or retailer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendant.

3.    Defendant be ordered to deliver up for impoundment and for destruction, all of the Infringing Product in Defendant's possession, custody, or control.

4.    Constellation be awarded all damages caused by the acts forming the basis of this Complaint.

5.    Based on Defendant's knowing and intentional infringement, that damages awarded to Constellation be trebled, the award of Defendant's profits be enhanced, Defendant be made to pay punitive damages (as permitted for Count IV), and Defendant be required to pay Constellation's costs and attorneys' fees.

6.    Constellation be awarded such other and further relief as the Court may deem just and proper.

Dated: Chicago, Illinois
      April 25, 2024

SEYFARTH SHAW LLP

By:*/s/ Emily C. Kesler*
    Bart A. Lazar
    blazar@seyfarth.com
    Emily C. Kesler
    ekesler@seyfarth.com
    233 South Wacker Drive, Suite 8000
    Chicago, IL  60606
    Telephone: (312) 460-5000
    Facsimile: (312) 460-7000

    Edward F. Maluf (*pro hac vice* application to be filed)
    Owen R. Wolfe (*pro hac vice* application to be filed)
    emaluf@seyfarth.com
    owolfe@seyfarth.com
    620 Eighth Avenue
    New York, New York  10018
    Telephone:  (212) 218-5500
    Facsimile:  (212) 218-5526

    *Attorneys for Plaintiffs*